Case 4:19-cv-02022   Document 17   Filed on 06/03/20 in TXSD   Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
June 03, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ADOLPHUS ARDOIN, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | Civil Action No.: 4:19-cv-02022 |
| § | |
| ANDREW SAUL, § | |
| COMMISSIONER OF THE § | |
| SOCIAL SECURITY ADMINISTRATION, § | |
| § | |
| *Defendant*. § | |

## MEMORANDUM AND ORDER

Plaintiff Adolphus Ardoin filed this action under the Social Security Act, 42 U.S.C. §§ 405(g), for review of the Commissioner's final decision denying his request for disability insurance benefits. Ardoin and the Commissioner moved for summary judgment. Dkt. 14, 16. Having considered the filings, the record, and the applicable law, the Court **DENIES** Ardoin's Motion (Dkt. 14), **GRANTS** the Commissioner's Motion (Dkt. 16), and **AFFIRMS** the Commissioner's final decision.[1]

### I. Background

**1. Factual and Administrative History**

Ardoin filed a claim for disability insurance benefits on May 3, 2016, alleging a disability onset date of October 9, 2015. Tr. 19. Ardoin alleged disabilities of two finger amputations, asthma/bronchitis, right shoulder pain, heart arrythmias, low back pain, and cervical pain. Tr. 21. The agency denied his claim on initial review on October 12, 2016 and on reconsideration on March 16, 2017. Tr. 78-80, 88-90. An administrative law judge ("ALJ") held a hearing on March

---

[1] The parties consented to the jurisdiction of this Magistrate Judge for all purpose. Dkt. 7.

1

1, 2018 at which Ardoin and a Vocational Expert ("VE") testified. Tr. 35-60. The ALJ denied Ardoin's application for benefits on April 16, 2018. Tr. 19-26. The Appeals Council granted review on January 30, 2019, but ultimately adopted the ALJ's decision that Ardoin was not under a disability at any time through the date of the ALJ's decision. Tr. 4-7.

## 2. Standard for Review of the Commissioner's Decision

Federal court review of the Commissioner's final decision to deny Social Security benefits is limited to two inquiries: (1) whether the Commissioner applied the proper legal standard; and (2) whether the Commissioner's decision is supported by substantial evidence. *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). When reviewing the Commissioner's decision, the Court does not reweigh the evidence, try the questions *de novo*, or substitute its own judgment for that of the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Id*.

## 3. Disability Determination Standards

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The ALJ must follow a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

At the first step, the ALJ decides whether the claimant is currently working or "engaged in substantial gainful activity." *Id*. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the claimant is not disabled. At the second step, the ALJ must determine whether the claimant has a severe impairment. *Id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant's impairment does not have a de minimis impact on her ability to work, she is not disabled. *Salmond v. Berryhill*, 892

F.3d 812, 817 (5th Cir. 2018). The third step of the sequential analysis requires the ALJ to determine whether the claimant's severe impairment meets or medically equals one of the listings in the regulation known as Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § pt. 404, subpt. p, app. 1 [hereinafter "App. 1"]. If so, the claimant is disabled. If not, the ALJ must determine the claimant's "residual functional capacity" (RFC), which is the claimant's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments. *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. § 404.1545). At step four, the ALJ determines whether the claimant's RFC permits her to perform her past relevant work. If the answer is no, the ALJ determines at step five whether the claimant can perform any other work that exists in the national economy. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). The claimant bears the burden to prove disability at steps one through four, but the burden shifts to the Commissioner at step five. *Newton v. Apfel*, 209 F.3d at 452-53.

### 4. The ALJ's Decision

Based on these principles, as well as his review of the evidence presented at the hearing, the ALJ determined the following: Ardoin met the insured status requirements of the Social Security Act through December 31, 2021; although Ardoin had engaged in substantial gainful activity for seven to eight months during 2016, there was a continuous 12-month period during which Ardoin did not engage in substantial activity; and Ardoin suffers from the severe impairments of two finger amputations on his left hand and asthma/bronchitis. Tr. 21. The ALJ also concluded Ardoin suffers from the following non-severe impairments: heart arrythmias, right shoulder pain, low back pain, and cervical pain. *Id*. The ALJ found Ardoin did not have an impairment or combination of impairments that met or medically equaled the severity of one of

the listed impairments in Appendix. Tr. 22. The ALJ determined Ardoin has the RFC for medium work with additional limitations:

> Specifically, [Ardoin] can stand/walk up to 6 hours in an 8 hour workday; sit up to 6 hours in an 8 hour workday; can occasionally climb ropes, ladders, and scaffolds; is right hand dominant but can occasionally handle with the outer two fingers but never finger or feel with those fingers; and occasional exposure to temperature extremes, damp/dry conditions, gases/fumes, dust/smoke, and chemicals.

*Id.*[2] Relying on the testimony of the VE, the ALJ determined that, although Ardoin was unable to perform any past relevant work, he had acquired skills that were transferable to other jobs existing in significant numbers in the national economy. Tr. 24-25. For that reason, the ALJ concluded Ardoin has not been under a disability as defined by the Social Security Act and denied his application for benefits. Tr. 25.

## II. Analysis

Ardoin challenges the ALJ's finding, arguing three points of error. Dkt. 14 at 5. First, Ardoin argues the ALJ applied an improper severity standard in determining which of Ardoin's impairments are severe. *Id.* Second, Ardoin argues the ALJ's RFC finding fails to accommodate for all of his impairments. *Id.* Third, Ardoin argues the ALJ erred in relying on the VE's testimony to find Ardoin retained the ability to perform other work existing in significant numbers in the national economy. *Id.*

---

[2] The language in the ALJ's written decision describing Ardoin's RFC is unclear whether it limits the use of Ardoin's left or right hand. Tr. 22. However, the ALJ clarified during the disability hearing that Ardoin's right hand is dominant and his left hand is limited as described in the RFC. Tr. 51, 57-58. Ardoin does not contest this point. Dkt. 14 at 10 ("Upon initial reading of this RFC it is unclear whether the ALJ intends to limit the use of Plaintiff's left or right hand. However, when the hearing transcript is reviewed, the ALJ explains that Plaintiff is right hand dominant, but that Plaintiff's left hand is limited as indicated in the ALJ's RFC finding. Hence, the ALJ accommodates for Plaintiff's left hand impairments.").

1. **The ALJ committed harmless error by using an incorrect standard in determining the severity of Ardoin's impairments at step two.**

Ardoin argues the ALJ utilized an improper severity standard at step two to find that his right shoulder pain, heart arrythmias, low back pain, and cervical pain impairments were not severe. Dkt. 14 at 5-9. In *Stone v. Heckler*, the Fifth Circuit held that an "impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." 752 F.2d 1099, 1101 (5th Cir. 1985) (quotations omitted). The *Stone* court also held an ALJ is presumed to have applied an incorrect standard "unless the correct standard is set forth by reference to [the *Stone*] opinion or another of the same effect[.]" *Id*. at 1106. In this case, the ALJ did not cite the *Stone* standard or "another of the same effect" in his analysis.[3] Instead, the ALJ found that Ardoin's right shoulder pain, heart arrythmias, low back pain, and cervical pain impairments did not "significantly limit" his ability to work. Tr. 21. Thus, the ALJ held Ardoin to a higher standard than the one set forth in *Stone* and since reaffirmed by the Fifth Circuit. *See, e.g.*, *Loza v. Apfel*, 219 F. 3d 378, 391 (5th Cir. 2000); *see also Salmond v. Berryhill*, 892 F.3d at 817; *see also Garcia v. Berryhill*, 880 F.3d at 705 (citing *Stone* as the proper standard).

The ALJ's use of an improper standard at step two is subject to a harmless error analysis. *See Murphy v. Berryhill*, No. 3:17-CV-01260-M-BH, 2018 WL 4568808, at *14 (N.D. Tex. Sep. 24, 2018) (citations omitted) ("*Stone* error does not mandate automatic reversal and remand,

---

[3] The boilerplate "Applicable Law" section of the decision notes that "[a]n impairment or combination of impairments is 'not severe' when medical or other evidence establish only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work." Tr. 20. But there is no indication in the ALJ's decision that he actually found Ardoin to have a "slight abnormality" that had "not more than a minimal effect" on his ability to work. Instead, he found only that his impairments do not "significantly limit" his ability to work. Tr. 21.

5

however; application of harmless error analysis is appropriate in cases where the ALJ proceeds past step two in the sequential evaluation process."). "[T]he major policy underlying the harmless error rule is to preserve judgments and avoid waste of time[,]" and a decision of the Commissioner "is not to be vacated unless a substantial right of the claimant has been adversely affected." *Jones v. Astrue*, 851 F. Supp. 2d 1010, 1015 (N.D. Tex. 2012) (citing *Audler v. Astrue*, 501 F. 3d 446 (5th Cir. 2007). Ardoin bears the burden of proving the error was not harmless by showing he was prejudiced by it. *Jones v. Astrue*, 691 F.3d 730, 734-35 (5th Cir. 2012).

A step two error is harmless if the ALJ proceeds beyond step two and gives proper consideration to both the severe and non-severe impairments in the remaining steps. *See Goodman v. Comm's of Soc. Sec. Admin.*, Civil Action No. 3:11-CV-1321-G(BH), 2012 WL 4473136, at *10 (N.D. Tex. Sep. 10, 2012) (finding the ALJ's step two error harmless where the ALJ proceeded past step two and considered the claimant's severe and non-severe impairments at the remaining steps); *see also Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (explaining error is harmless when it is inconceivable that a different administrative conclusion would have been reached absent the error). The ALJ's written decision demonstrates he considered both severe and non-severe impairments when determining the RFC. Tr. 22. For example, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ." *Id*. The ALJ found that Ardoin's statements concerning the intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the evidence in the record. Tr. 23-24. The ALJ addressed each of Ardoin's impairments found to be not severe at step two and identified evidence in the record that conflicts with Ardoin's statements regarding the intensity, persistence and limiting effects of the symptoms:

6

*Heart arrythmias*. The ALJ noted that Ardoin went to the hospital with intermittent heart palpitations in May 2016, December 2016, and December 2017, but chest x-rays indicated no cardiopulmonary disease. Tr. 397, 411, 601. The ALJ also noted that Ardoin had been experiencing heart palpitations for years (while he was still working). Tr. 23.

*Right shoulder pain.* The ALJ noted that Ardoin testified that he could not raise his right shoulder above his head due to a gunshot wound from 1980 and that medical records showed Ardoin had a decreased range of motion in his right shoulder. Tr. 23, 50, 498. Yet, the ALJ referred to Ardoin's testimony that he continued to work following the gunshot in 1980 until his employer closed in 2015. Tr. 23, 40, 53.

*Low back and cervical pain.* Ardoin complained of injuries and pain in his neck and back following a car accident in August 2017. Tr. 457-58. When evaluating Ardoin's back and neck impairments, the ALJ noted that Ardoin did not seek medical attention immediately following the accident and his symptoms were moderate at worst. Tr. 23, 460. Ardoin's spine x-rays were unremarkable and notes in the medical record state the accident did not affect Ardoin's ability to work. Tr. 23, 474-77. Furthermore, Ardoin's neurological exam was within normal limits, and he underwent physical therapy and chiropractic care from September 2017 to November 2017 with improvement in his neck and back impairments. Tr. 23, 495-529.

Although the ALJ applied an erroneous standard at step two when finding Ardoin's heart arrythmias, right shoulder pain, low back and cervical pain to be non-severe impairments, he still considered the effects of those impairments on Ardoin's ability to perform work-related activities. *See* 20 C.F.R. § 404.1545(e); Tr. 23-24. Because the ALJ considered the limiting effects of Ardoin's non-severe impairments that he found to be consistent with the evidence in the record, it is inconceivable he would have reached a different conclusion had he classified the same impairments as severe at step two. Therefore, the ALJ's application of the incorrect standard at step two constitutes harmless error. *See Goodman v. Comm's of Soc. Sec. Admin.*, 2012 WL 4473136, at *10 (finding the ALJ's step two error harmless where the ALJ proceeded past step two and considered the claimant's severe and non-severe impairments at the remaining steps); *see also Bornette v. Barnhart*, 466 F. Supp. 2d at 816 (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)) ("Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error.").

**2. The ALJ did not err by failing to accommodate Ardoin's impairments with the RFC.**

As discussed above, the ALJ proceeded beyond step two and considered both severe and non-severe impairments he found to be supported by the record at later steps. Ardoin does not dispute this point; he argues instead that the RFC does not properly accommodate all of his impairments. Dkt. 14 at 9. The real crux of Ardoin's argument, however, is not that the RFC fails to accommodate impairments recognized by the ALJ, but that the ALJ found Ardoin's statements regarding the intensity, persistence, and limiting effects of his symptoms not entirely consistent with the evidence in the record, and therefore did not accommodate those impairments in the RFC. Pointing to his subjective complaints and symptoms, Ardoin argues that the ALJ should have assigned a more limited RFC. Dkt. 14 at 11 ("The RFC fails to accommodate for Plaintiff's back impairment . . . which affects Plaintiff's ability to sit and stand. It fails to accommodate for Plaintiff's right shoulder impairment which affects Plaintiff's ability to lift and reach, and clearly provides no limitation for Plaintiff's cervical impairments which affect Plaintiff's ability to lift, reach, stand, perform key boarding, and his ability to drive.").

The ALJ's determination that a claimant's subjective complaints are not consistent with the record is entitled to deference. *Puente v. Astrue*, 738 F. Supp. 2d 669, 685 (S.D. Tex. 2008) (citing *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (citations omitted)). The ALJ's written decision clearly demonstrates that the ALJ considered Ardoin's subjective complaints and symptoms, but found his statements regarding the intensity, persistence, and limiting effects of his symptoms to be not entirely consistent with the medical evidence. *See Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988) ("The problem with [the claimant's] argument [that her testimony was evidence substantiating her allegations of debilitating pain], of course, is that the ALJ explicitly found her testimony not to be credible."). To the extent Ardoin argues these subjective complaints

8

should have been given greater weight by the ALJ, resulting in a more restrictive RFC, he is asking the Court to reweigh the evidence, something the Court cannot do. *See Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977) (citations omitted) ("The role of the reviewing court is quite limited. It may neither reweigh the evidence nor substitute its judgment for that of the Secretary."); s*ee also Hollis v. Bowen*, 837 F.2d at 1385 (citations omitted) ("[A] resolution of conflicts between the subjective evidence and the medical evidence should depend on the ALJ's evaluation of the credibility of the claimant's complaints of pain.").

In addition, and as part of his argument that the RFC fails to accommodate his impairments, Ardoin contends the ALJ erred by determining an RFC that "in no way" accommodates for traumatic brain injury resulting from the August 2017 car accident. Dkt. 14 at 11. According to Ardoin, his traumatic brain injury results in difficulties with concentration, attention, short-term memory, word finding, fatigue, loss of motivation, headaches, loss of balance, ringing in the ears, lightheadedness, and sleep changes. *Id*. Similarly, Ardoin argues the ALJ erred by failing to address his right hand, which became numb and weak following the car accident. *Id*. at 8.

It is the claimant's burden to prove his disability. *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995). Disability benefits may only be awarded for "impairments," which are abnormalities that can affect a claimant's ability to engage in substantial gainful activity. *Veal v. Soc. Sec. Admin.*, 618 F. Supp. 2d 600, 606 (E.D. Tex. 2009). To rise to the level of an impairment, an abnormality must be such that it can be shown by medically acceptable clinical and laboratory diagnostic techniques, rather than a claimant's subjective statements or symptoms alone. 20 C.F.R. § 404.1508, *Veal v. Soc. Sec. Admin.*, 618 F. Supp. 2d at 606. When the ALJ does not find an abnormality to be an impairment, the ALJ does not err in failing to expressly mention that

9

abnormality in the written decision.[4] *Veal v. Soc. Sec. Admin.*, 618 F. Supp. 2d at 606 (explaining an ALJ only errs by failing to expressly mention or discuss an abnormality where (a) the ALJ considered the abnormality to be an impairment and (b) the ALJ determined the impairment, singly or in combination, was severe).

While the medical record includes Ardoin's subjective complaints of symptoms consistent with traumatic brain injury and right hand weakness/numbness, the record is insufficient to establish that either constitutes a present impairment. For example, the record indicates that Ardoin's traumatic brain injury symptoms resolved by November 2017. Tr. 498. When receiving treatment from a chiropractor in late September 2017 for injuries sustained in the August 2017 car accident, Ardoin complained of fatigue, loss of motivation, headaches, loss of balance, ringing in ears, lightheadedness, and sleep changes. Tr. 517, 526. However, by October 2017, Ardoin complained only of headaches. Tr. 510. The chiropractor referred him to a neurologist whom he saw on October 3, 2017. Tr. 517. The neurological exam performed by the neurologist was normal. Tr. 517. Ardoin attended two follow-up appointments with the neurologist after the initial consultation. Tr. 503, 508. By November 2017, Ardoin reported his headaches had resolved and an examination showed he was neurologically stable. Tr. 498, 503-05. The record contains a notation that if any symptoms of a potential traumatic brain injury continued for 9 to 12 months following the accident, Ardoin would be referred for formal neuropsychological testing. Tr. 503. The record contains no further follow-up with the neurologist or for any neuropsychological testing

---

[4] Although an ALJ need not discuss symptoms he does not find to rise to the level of an impairment, the ALJ is still required to consider *all* available evidence. *Veal v. Soc. Sec. Admin.*, 618 F. Supp. 2d at 606 (citing *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001)). In this case, the ALJ fulfilled his duty to consider all evidence in the record. Tr. 22 ("After careful consideration of the entire record, the undersigned finds that the claimant has the [RFC] to perform medium work . . . with additional limitations. . . . In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence . . . .").

and suggests the traumatic brain injury was resolved. Therefore, the record indicates no present impairment exists related to a traumatic brain injury. *See Veal v. Soc. Sec. Admin.*, 618 F. Supp. 2d at 606 (finding the claimant's subjective complaints were insufficient to establish an impairment where the underlying cause of the symptoms was repaired with surgery and objective medical evidence did not show an ongoing physical impairment).

Likewise, the record is devoid of any further treatment, follow up, or complaint concerning Ardoin's right wrist or hand. In September 2017, Ardoin had a normal neurological examination except for some hypersensitivity and weakness in his right wrist and hand. Tr. 523-24. In October 2017, Ardoin denied any significant pain in either of his hands but had continued weakness and numbness. Tr. 508. He had normal muscle strength in his upper extremities. Tr. 498, 503, 505, 510. By November 2017, Ardoin was improved in his upper extremity symptoms, which the neurologist noted responded well to medication and therapy. Tr. 503. The record contains no continued treatment or follow-up related to Ardoin's right hand complaints and does not reflect a present impairment related to Ardoin's right hand exists. *See Veal v. Soc. Sec. Admin.*, 618 F. Supp. 2d at 606.

**3. The ALJ did not err by relying on the vocational expert's testimony.**

In his third point of error, Ardoin argues the ALJ erred in relying on the VE's testimony to conclude Ardoin can perform work that exists in significant numbers in the national economy. Dkt. 14 at 12. In support of his argument, Ardoin first argues the ALJ erred by relying on the response to a hypothetical question that omitted accommodations for traumatic brain injury and right hand limitations. Second, Ardoin argues the VE's testimony that he could work as a hand packager, dining room attendant, or retail stocker conflicts with the ALJ's own RFC determination. *Id*. at 14-15.

### A. The ALJ did not err in relying on the response to the hypothetical question.

A determination of non-disability based on a defective hypothetical question cannot stand. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994) (citations omitted). On the other hand, a hypothetical question posed to a VE can constitute substantial evidence supporting a denial of benefits where the hypothetical meets two requirements. First, it must "incorporate reasonably all disabilities of the claimant recognized by the ALJ . . . ." *Id*. Second, the claimant must be afforded an opportunity to correct deficiencies in the question. *Id*.

Regarding the first requirement, a hypothetical is deemed to have "incorporate[d] reasonably" the claimant's disabilities recognized by the ALJ where the hypothetical question "tracks" the RFC. *See Boyd v. Colvin*, Civil Action No. 3:14-CV-3621-B-BH, 2016 WL 11431548, at *20 (N.D. Tex. Mar. 28, 2016), *adopted by* 2016 WL 1578767 (N.D. Tex. Apr. 19, 2016) (explaining a VE's testimony supports a disability determination where the hypothetical question "tracks" with the RFC determination and the RFC is supported by substantial evidence); *see also Canavas v. Comm'r of Soc. Sec.*, C.A. No. C-11-399, 2012 WL 2160924, at *13 (S.D. Tex. May 22, 2012), *adopted by* 2012 WL 2160121 (S.D. Tex. June 13, 2012) (explaining a hypothetical question that tracks the RFC reasonably incorporates the claimant's disabilities as recognized by the ALJ). In this case, the ALJ's hypothetical question tracked the RFC finding. *Compare* Tr. 22 *with* Tr. 57-58. The ALJ asked VE to consider an individual who

> could work at a medium exertional level. They could lift and carry occasionally 50 pounds, but frequently, we're down to only 25 pounds. They could stand and walk up to six hours, normal workday, with normal breaks and sit for six hours. This person can occasionally climb ladders, ropes or scaffolding. This person . . . is right-handed or right hand dominant but with the left hand this person could only occasionally do handling and with the two outer most fingers, which have been amputated, that would be the ring finger and the little finger of the left hand . . . this person can . . . never do any fingering or feeling with those fingers. Now, this person can have only occasional exposure to temperature extremes, damp or dry

12

>conditions, gases, fumes, dust, smoke or chemicals. . . . [W]ould there be any other jobs available for this person at the medium exertional level?

Tr. 57-58. The hypothetical question at issue is substantively identical to and clearly tracks the ALJ's RFC determination. As discussed in the section above, the ALJ did not err by failing to include in the RFC limitations for symptoms he did not find to be impairments--traumatic brain injury and right hand injury.

Regarding the second requirement, Ardoin also had the opportunity to correct deficiencies in the question posed to the VE. After the VE testified in response to the same hypothetical question now alleged as error, Ardoin's counsel declined the opportunity to question the VE. Tr. 59. The ALJ's hypothetical question incorporated Ardoin's impairments as recognized by the ALJ and Ardoin had a fair opportunity to raise any alleged defects in the hypothetical question. Therefore, the ALJ was entitled to rely on the VE's testimony that a person with those limitations could not perform Ardoin's past work but could perform other jobs in the national economy. *See Bowling v. Shalala*, 36 F.3d at 436; Tr. 44-45.

### B. No conflict exists between the vocational expert's testimony and the DOT.

The VE characterized the jobs of retail stocker, dining room attendant, and hand packager as medium, unskilled positions, which comports with the descriptions of those occupations in the Dictionary of Occupational Titles ("DOT"). 311.677-018 Dining Room Attendant, 1991 WL 672696 (4th ed. 1991); 922.687-089 Laborer, Stores, 1991 WL 688132 (4th ed. 1991); 920.587-019 Packager, Hand, 1991 WL 687916 (4th ed. 1991); Tr. 58. The DOT descriptions provide the *maximum* requirements for these positions as they are generally performed, s*ee Haas v. Barnhart*, 91 F. App'x. 942, 948 (5th Cir. 2004) (citations omitted), and include requirements for each job which are compared to Ardoin's RFC, as illustrated below:

13

| Occupation | Handling Requirement | Fingering Requirement | Feeling Requirement |
|---|---|---|---|
| Dining Room Attendant | Constantly[5] | Occasionally[6] | Not required |
| Retail Stocker | Frequently[7] | Frequently | Not required |
| Hand Packager | Constantly | Constantly | Not required |
| Ardoin's RFC | Occasionally with outer fingers of left hand (partially amputated fingers); no reference to limitations of right hand or other fingers on left hand | Never with the outer two fingers of left hand (partially amputated fingers); no reference to limitations of right hand or other fingers of left hand | Never with the outer two fingers of left hand (partially amputated fingers); no reference to limitations of right hand or other fingers of left hand |

311.677-018 Dining Room Attendant, 1991 WL 672696 (4th ed. 1991); 922.687-089 Laborer, Stores, 1991 WL 688132 (4th ed. 1991); 920.587-019 Packager, Hand, 1991 WL 687916 (4th ed. 1991).

Ardoin argues the ALJ erred by relying on the VE's testimony because the handling and fingering requirements in the DOT conflict with Ardoin's limitations as set forth in the RFC. Dkt. 14 at 14-15. The DOT descriptions for these positions require, at a minimum, an ability handle objects between one-third and two-thirds of the day and an ability to finger objects up to one-third of the day. *See* 311.677-018 Dining Room Attendant, 1991 WL 672696 (4th ed. 1991); 922.687-089 Laborer, Stores, 1991 WL 688132 (4th ed. 1991); 920.587-019 Packager, Hand, 1991 WL

---

[5] "Constantly" means two-thirds or more of the time. 311.677-018 Dining Room Attendant, 1991 WL 672696 (4th ed. 1991); 922.687-089 Laborer, Stores, 1991 WL 688132 (4th ed. 1991); 920.587-019 Packager, Hand, 1991 WL 687916 (4th ed. 1991.
[6] "Occasionally" means up to one-third of the time. *Id*.
[7] "Frequently" means one-third to two-thirds of the time. *Id*.

687916 (4th ed. 1991). Ardoin argues these requirements conflict with his RFC, which limits him to occasional handling with the outer two partially amputated fingers on his left hand and never fingering with those fingers. Dkt. 14 at 14-15; Tr. 22. Therefore, he argues, the ALJ's finding that he can perform other work existing in significant numbers in the national economy, is not supported by substantial evidence. Dkt. 14 at 12-15.

As was the case in *Carey v. Apfel,* Ardoin infers a requirement that both hands must meet the handling and fingering requirements contained in the DOT descriptions. 230 F.3d 131 (5th Cir. 2000). In *Carey* the claimant had the use of only one hand due to the below-elbow amputation of one arm. *Id*. at 136. The ALJ determined he retained the RFC to perform light, unskilled work, with limitations resulting from his amputation. *Id*. at 145. The VE, in response to a hypothetical question tracking the claimant's RFC, determined the claimant could perform the job of cashier or ticket taker. *Id*. On appeal, the claimant argued the VE's testimony that he could work as a cashier or ticket seller conflicted with the DOT because both jobs required handling and fingering between one-third and two-thirds of the day. *Id*. The Fifth Circuit determined that no true conflict existed between the RFC and the description of the jobs in the DOT. *Id*. at 146. According to the Fifth Circuit, the claimant's conflict argument rested on the inference that the jobs identified by the VE required the use of both hands for fingering and handling, but the DOT listing did not contain any requirements for bilateral fingering or handling. *Id*. Further, the VE testified that the positions could be performed with the use of only one arm. *Id*.

As was the case in *Carey*, the DOT does not include a requirement for bilateral handling or fingering for the occupations at issue. Therefore, the VE's testimony that Ardoin could perform these jobs with his left hand limitations is not in conflict with the DOT. *See id*. (finding no conflict between the VE's testimony that a claimant with one arm could perform jobs requiring some ability

15

to finger and handle objects where the DOT does not include any requirement of bilateral fingering or handling ability). Furthermore, an ALJ may, in appropriate cases, give greater weight to VE testimony than to findings in the DOT, at least in part because the VE's testimony is tailored to the claimant's vocational profile while the DOT provides only standardized job information. *Romine v. Barnhart*, 454 F. Supp. 2d 623, 626 (E.D. Tex. 2006)

Further, the ALJ met his burden to ask the VE whether his testimony conflicted with the DOT, and the VE confirmed there is no conflict. Tr. 59; *see* SSR 00-4p (explaining that, before relying on a VE's testimony, ALJ must identify and obtain a reasonable explanation for any conflicts and explain how those conflicts are resolved). Ardoin, who was represented by counsel at the hearing, was given an opportunity to question the VE and could have raised the issue of an alleged conflict. Ardoin failed to challenge the VE's testimony. The case should not be remanded based on an alleged conflict between the RFC and DOT descriptions when the alleged conflict failed to merit cross examination of the VE at the hearing. *See Carey v. Apfel*, 230 F.3d at 146-47 ("[C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing."); *Romine v. Barnhart*, 454 F. Supp. 2d at 630 (discussing two cases involving alleged conflicts in which the Fifth Circuit refused remand because it found no irreconcilable conflict and claimant had failed to raise the alleged conflict at the administrative hearing).

### III. CONCLUSION

For the reasons stated above, the Court concludes that the ALJ's decision denying disability benefits is supported by substantial evidence and was not error. Therefore, the Court recommends

the Commissioner's Motion (Dkt. 16) be **GRANTED**, Ardoin's Motion (Dkt. 14) be **DENIED**, and the final decision of the Commissioner be **AFFIRMED**.

Signed on June 3, 2020 at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge